J-S29026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARRYL WOODARD | : | |
| | : | |
| Appellant | : | No. 2121 EDA 2020 |

Appeal from the Judgment of Sentence Entered September 23, 2020,
in the Court of Common Pleas of Delaware County,
Criminal Division at No(s): CP-23-CR-0005204-2018.

BEFORE: PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:               **FILED JANUARY 4, 2022**

Darryl Woodard appeals from the aggregate judgment of sentence imposed following his conviction of two counts of terroristic threats, and one count each of simple assault, persons not to possess a firearm, firearms not to be carried without a license, and possession of an instrument of crime ("PIC").[1] We affirm Woodard's convictions and all aspects of his judgment of sentence except for the order of restitution in the amount of $134.00, which we vacate.

The trial court summarized the relevant factual and procedural history as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2706(a)(1), 2701, 6105(a)(1), 6106(a)(2), 907(b).

On June 7, 2018, members of the Upper Darby Township Police Department were dispatched to 245 Copley Road, Upper Darby, Delaware County, Pennsylvania following the report of a road rage incident involving an armed subject. A female caller[, Waltina White,] reported a black male operating a white Volvo SUV with possible Pennsylvania registration plate KMP-1333 had brandished a firearm at members of her family. The female caller reported the male left the scene in a white Volvo SUV in pursuit of her son[, Brendan Brown]. Marked Upper Darby Police units arrived on location and four victims stated the subject became irate because a car was blocking Copley Road making it impossible for his white Volvo SUV to pass. The subject in the white Volvo exited his vehicle and was reported to have made a threat[en]ing statement while brandishing a handgun. [Specifically, Woodard, while pointing a firearm at White from an arm's length distance while she was standing in front of Brown, asked White if Brown was her son, and then stated, "I got something for this little mother fucker."]

Victim #2, later identified as Brendan Brown, indicated that he briefly double-parked his mother's vehicle in front of her home while he ran inside her house. [Brown, who was visiting from Louisiana to attend his younger sister's graduation, had been bowling with the sister, Brenee Brown, and her friend, Kayla Stepteau. As Brown ran in the house, Brenee and Kayla were exiting the vehicle. Woodard began yelling obscenities at the girls and simulated ramming into them with his SUV.] When Brown came back out of the house, he heard Woodard yelling obscenities at White. Brown indicated that there was no need for Woodard's aggression and that he would move the vehicle. Woodard then stated, "this is Philadelphia." Brown replied that he was visiting from out of town. In response, Woodard went back to his vehicle and reached in the passenger door. Fearing for his safety, [Brown] drove his [mother's] vehicle from the scene followed by [Woodard] at a high rate of speed. [Woodard pulled his vehicle alongside the vehicle that Brown was driving. Brown then made a series of turns to evade Woodard.] Upper Darby Police Officer Louis P. Garay, Jr. together with Officer Michael Taylor were searching the area for the identified white Volvo SUV. While in the area of Walnut Street and Copley Road, Upper Darby Township, these officers observed a white Volvo XC90 SUV bearing Pennsylvania registration KNP-1333. Officer Garay activated his marked police vehicle's emergency lights and audible siren to conduct a vehicle stop. The male operator, later identified

as [Woodard], stopped and exited the vehicle. A pat down was conducted for officer safety. Officer Garay observed in plain view the handle and magazine of a firearm protruding from beneath the passenger seat of the white Volvo SUV. The firearm was secured and [Woodard] was detained for investigation. The firearm recovered was a 9mm Taurus model PT92AVL, bearing serial # TXF84464. It was loaded with twenty-seven rounds of ammunition in an extended magazine.

* * *

In this case, a DNA swab to procure DNA evidence from the gun was also conducted. The DNA swabs are sent to the Pennsylvania State Police Lab for analysis. . . . The Pennsylvania State Police lab matched [Woodard's] DNA with the DNA located on the handgun recovered from the white Volvo X90 SUV[.]

Trial Court Opinion, 2/10/21, at 2-4, 13-14 (footnotes, citations to the record, and unnecessary capitalization omitted).

Woodard was arrested and charged with numerous offenses. The matter proceeded to a jury trial in February 2020. Brown traveled from his home in Louisiana to testify at Woodard's trial. At the conclusion of trial, the jury convicted Woodard of the above-mentioned offenses. On September 23, 2020, the trial court imposed an aggregate sentence of nine and one-half to nineteen years in prison.[2] The trial court additionally ordered Woodard to pay restitution in the amount of $134.00 to Brown for his travel costs to attend trial. The trial court also ordered Woodard to pay the costs of prosecution and a DNA crime lab fee of $1,340.00. Woodard filed a post-sentence motion

_____

[2] The trial court ordered that all of Woodard's sentences would run concurrently except for persons not to possess and firearms not to be carried without a license, which would run consecutively.

which the trial court denied. Woodard thereafter filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Woodard raises the following issues for our review:

1. Whether the evidence was insufficient as a matter of law to establish the elements of terroristic threats beyond a reasonable doubt, in violation of [Woodard's] federal and state constitutional rights?

2. Whether the trial court erred as a matter of law and violated the discretionary aspects of sentencing when it imposed a manifestly excessive and unreasonable aggregate sentence of 9½ to 19 years of incarceration, inasmuch as the trial court failed to state any reasons for imposition of the sentence; the court failed to give individualized consideration to [Woodard's] personal history, rehabilitative needs and background; and the sentence was in excess of what was necessary to address the gravity of the offense, the protection of the community and [Woodard's] rehabilitative needs?

3. Whether the orders of restitution in the amounts of $1,340.00 payable to the . . . police department and $134.00 payable to . . . Brown constitute an illegal sentence under 18 Pa.C.S.[A.] § 1106?

4. Whether the trial court erred in denying [Woodard's] motion for a new trial, as the verdict was against the weight of the evidence where the evidence of record was so inherently unreliable such that the determination of [Woodard's] guilt was based purely on speculation and conjecture, in violation of [Woodard's] constitutional rights under the state and federal constitutions?

Woodard's Brief at 5-6 (some capitalization omitted).

In his first issue, Woodard challenges the sufficiency of the evidence supporting his convictions for terroristic threats. Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v.*

- 4 -

*Sanchez*, 36 A.3d 24, 37 (Pa. 2011). In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, the fact finder, "which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011).

A person commits the crime of terroristic threats if he "communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). The elements

- 5 -

necessary to establish terroristic threats are: (1) a threat to commit a crime of violence; and (2) that the threat was communicated with the intent to terrorize. **Commonwealth v. Walls**, 144 A.3d 926, 936 (Pa. Super. 2016). The purpose of § 2706 is to impose criminal liability on persons who make threats which seriously impair personal security; it is not intended to penalize mere spur-of-the-moment threats which result from anger. **Id**. The offense does not require that the actor intended to carry out the threat, only that he intended to terrorize. **Commonwealth v. Anneski**, 525 A.2d 373, 375 (Pa. Super. 1985). We consider the totality of the circumstances to determine if the actor had the necessary *mens rea*. **Commonwealth v. Reynolds**, 835 A.2d 720, 730 (Pa. Super. 2003).

Woodard argues that the Commonwealth failed to establish the elements of terroristic threats as to either Brown or White. Woodard maintains that no threat was communicated to, or heard by, Brown. Woodard claims that he and Brown exchanged words, and Brown only heard Woodard say "this is Philadelphia." Woodard's Brief at 23. According to Woodard, Brown saw Woodard go back to his car, but Brown did not see what Woodard was doing and never saw a gun. Woodard argues that there was no evidence that Woodard communicated a threat to commit any crime of violence with intent to terrorize Brown.

Woodard further claims that his statements to White, "is that your son? . . . I got something for that mother fucker" while holding a firearm was not

sufficient to establish that a threat was communicated to or received by either Brown or White. Woodard's Brief at 23 (citing N.T., 2/12/20, at 96). Woodard claims that because Brown did not hear the statement made to White, he did not receive it and therefore his personal security could not have been seriously impaired. Woodard points out that White testified that when Brown and Woodard were arguing, she heard Woodard say, "well I'm going to show you how we get down around here." Woodard's Brief at 24 (citing N.T., 2/12/20, at 113-14). Woodard argues that because Brown, only heard Woodard say, "this is Philadelphia," the statements made to and heard by White were insufficient to constitute a terroristic threat against Brown, as he did not hear or receive them.

Woodard similarly argues that the same statements were not a terroristic threat against White because they were not directed to her. While Woodard acknowledges that White testified that Woodard pointed the firearm in her direction, Woodard nevertheless claims that his conduct and statements were insufficient to establish a terroristic threat against White.

Finally, Woodard asserts that his conduct and statements were the product of transitory anger resulting from a heated verbal exchange with Brown and White. He argues that because his conduct and statements were spur-of-the moment, the evidence was insufficient to establish the requisite intent required by the terroristic threats statute.

The trial court considered Woodard's first issue and determined that it

lacked merit. The court reasoned:

> At trial, Ms. White identified [Woodard] as the driver of the white SUV. [Woodard] made the remark that "I'm going to show you how we get down around here." [Woodard] then entered his car and grabbed something but Ms. White did not know what that object was until [Woodard] exited the vehicle. [Woodard] then asked Ms. White if that (referring to Brendan) was her son and Ms. White responded in the affirmative. [Woodard] said he "had something for that mother fucker" and pointed a gun at Ms. White.
>
> At trial, Mr. Brown also identified [Woodard] as the driver of the white SUV. Mr. Brown testified he told [Woodard] there was no need for the argument and Mr. Brown would simply move the vehicle. [Woodard] responded to Mr. Brown advising this is Philadelphia and Mr. Brown relayed that he lived in Louisiana. At this point, [Woodard] reache[d] inside the passenger door of his white SUV and appeared to be grasping for something. Fearing for his life, Mr. Brown drove away but [Woodard] followed in close pursuit. [Woodard] pulled alongside Mr. Brown's vehicle prompting Mr. Brown to execute a series of turns to evade [Woodard]. Ultimately, Mr. Brown eluded [Woodard], drove back to his mother's home at 245 Copley Road and parked in the rear alley.
>
> The testimony of both [Ms.] White and Mr. Brown highlighted above and buttressed by the testimony of witnesses Brenee Brown and Kayla Stept[e]au, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support the elements of the offense of terroristic threats as to both [Ms.] White and [Mr.] Brown.

Trial Court Opinion, 2/10/21, at 27-29. (citations to record omitted).[3]

---

[3] White's daughter and Brown's little sister, Brenee Brown, identified Woodard as the driver of the Volvo SUV. She testified that after she and her friend, Kayla Stepteau, exited White's vehicle, Woodard retrieved an object from his vehicle with a long black handle, which turned out to be a handgun. Brenee
*(Footnote Continued Next Page)*

Based on our review, we conclude that the evidence presented at trial was sufficient to support Woodard's convictions for terroristic threats as to both White and Brown. While we recognize that the terroristic threats statute is not intended to punish spur-of-the-moment threats which may be uttered in a heated exchange, the fact that threats are made in a heated exchange is not determinative. As this Court has explained, "the real issue [is] whether the Commonwealth presented sufficient evidence to establish the required *mens rea*, not whether the defendant made the statements in the context of a heated discussion." **Commonwealth v. Walker**, 836 A.2d 999, 1001 (Pa. Super. 2003). Further, the fact that that Woodard was angry did not prevent him from forming the *mens rea* required to sustain a terroristic threats conviction. **See Commonwealth v. Fenton**, 750 A.2d 863, 865 (Pa. Super. 2000) (holding that being angry does not render a person incapable of forming the intent to terrorize). As explained above, we look to the totality of the circumstances to determine if Woodard had the necessary *mens rea*. **Reynolds**, 835 A.2d at 730.

---

then yelled for her brother to run and witnessed Woodard level the firearm at her mother. **See** N.T., 2/12/20, at 127-28. Kayla Stepteau testified that, as she and Brenee were exiting the vehicle, Woodard drove up and began to honk and yell at them. She additionally testified that he drove his vehicle to simulate striking them. Kayla witnessed Woodard retrieve a large black gun from his vehicle. She then saw Woodard pursue Brown as he fled in his vehicle. **See id**. at 142-50.

Here, the totality of the circumstances clearly established that Woodard acted with either the intent to cause terror or reckless disregard for the risk of causing terror in White. Woodard, while enraged and yelling obscenities, simultaneously pointed a gun directly at White while they were standing an arm's length distance from one another, asked her if Brown was her son, and indicated "I got something for this little motherfucker." N.T., 2/12/20, at 98-99. Together, this language and conduct implied the threat that Woodard intended to shoot Brown, whom White had jumped in front of as Brown was getting back into her vehicle. *See id*. at 97, 99, 104.

Similarly, the pointing of the gun directly at White conveyed a threat that she too would be shot if Woodard so desired. Woodard did not need to specifically advise White that he intended to shoot her in order to communicate a threat of violence or place her in fear of her personal safety. *See Commonwealth v. McCalman*, 795 A.2d 412, 418 (Pa. Super. 2002) (determining the count of terroristic threats was established by the defendant's actions in holding a gun to three people's heads, even though the use of offensive language did not rise to the level of a terroristic threat); *see also In re Maloney*, 636 A.2d 671, 675 (Pa. Super. 1994) (noting that the pointing of a gun at occupants of a passing car was sufficient to support a conviction for terroristic threats, even absent a verbal threat, as conduct designed to express a threat was sufficient communication under § 2706); *Commonwealth v. Hudgens*, 582 A.2d 1352, 1359 (Pa. Super. 1990)

(holding that where a defendant displays a weapon while threatening a victim, the victim was "subjected to the precise type of psychological harm and impairment of personal security which the statute seeks to prevent"). Not surprisingly, White testified that Woodard's conduct made her "very frightened." N.T., 2/12/20, at 106. Thus, we conclude that the totality of the evidence when viewed in the light most favorable to the Commonwealth was sufficient to establish Woodard's conviction for terroristic threats as to White.

With respect to Woodard's conviction for terroristic threats as to Brown, Brown testified that when he exited his mother's house, he heard Woodard yelling obscenities and honking his horn. N.T., 2/12/20, at 47, 85. Brown told Woodard that he would move the car and indicated that there was no need for Woodard's aggression. *Id*. at 48, 51. At some point, Woodard exited his vehicle. *Id*. at 50. Woodard continued to argue with Brown, and stated "you know, this is Philadelphia." *Id*. at 51. In response, Brown indicated "I'm not from around here. I'm just in town visiting . . . for my sister's graduation." *Id*. Woodard, who was still cursing at Brown, then went to his vehicle and reached inside the passenger side. *Id*. at 51-52. Upon observing Woodard's actions, Brown, who did not know what Woodard was reaching for, became fearful. *Id*. Brown got back in his mother's car and drove off "out of fear for [his] life." *Id*. at 53, 88. Brown then looked in his rearview mirror and noticed that Woodard was closely following him. *Id*. at 54. Woodard then caught up to Brown and pulled the white Volvo SUV up alongside the driver's side of

Brown's vehicle. *Id*. Brown then made a series of right turns to evade Woodard. *Id*. at 55. Brown indicated that Woodard's conduct made him feel nervous and scared, and that he continued to fear for his safety. *Id*.

In our view, the totality of the circumstances established that Woodard acted with either the intent to cause terror or reckless disregard for the risk of causing terror in Brown and, in fact, communicated such threats to Brown. The fact that Woodard did not tell Brown that he was retrieving a gun from his car or make a verbal threat of harm to Brown is not determinative, as the inference of an intention to harm Brown was sufficient. *See Commonwealth v. Hudgens*, 582 A.2d 1352, 1358 (Pa. Super. 1990) (holding that defendant need not specify the type of violence he intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement).

In the instant matter, the jury could have inferred that Woodard's actions in yelling obscenities at Brown and then, during their heated exchange, going back to his vehicle to retrieve something, inferred a threat of harm to Brown. Examining the context of Woodard's actions, it would be reasonable for Brown to believe that Woodard was retrieving a weapon. Indeed, Woodard's conduct sufficiently communicated a threat of harm to Brown such that he feared for his life. N.T., 2/12/20, at 53, 88. The jury could have determined that a further threat of harm was inferred when, after Brown attempted to flee from Woodard by driving away from the scene, Woodard

chased Brown at a high rate of speed and pulled up next to him. Brown, who was already in fear for his life, could have reasonably believed that Woodard had a weapon and intended to catch up to Brown in order to harm him. These further actions by Woodard caused Brown to fear for his safety. *Id*. at 55.

Based on the totality of the circumstances when viewed in the light most favorable to the Commonwealth, we conclude that the evidence was sufficient to establish that Woodard either intended to terrorize Brown or acted with reckless disregard that his actions would cause terror in Brown, and did, in fact, cause such terror. Having determined that the record supports Woodard's convictions for terroristic threats as to White and Brown, Woodard's first issue merits no relief.[4]

In his second issue, Woodard challenges the discretionary aspects of his sentence. Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *See Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four[-]part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly

---

[4] Woodard's reliance on *Commonwealth v. Vergillo*, 103 A.3d 831 (Pa. Super. 2014) is misplaced. The *Vergillo* Court addressed the question of whether the trial court erred by concluding that it did not have jurisdiction over terroristic threats charges where the defendant in New Jersey communicated the threats over the phone to the victim in Pennsylvania. The *Vergillo* Court did not rule, as Woodard suggests, that a verbal threat cannot create fear for personal security unless the person actually hears it.

preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Id*. at 170 (citation omitted). When an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *See Commonwealth v. Yanoff*, 690 A.2d 260, 267 (Pa. Super. 1997); *see also Commonwealth v. Tuladziecki*, 522 A.2d 17, 18 (Pa. 1987); 42 Pa.C.S.A. § 9781(b).

In the instant case, Woodard filed a timely notice of appeal, raised a discretionary sentencing claim in a timely post-sentence motion, and included in his appellate brief a separate Rule 2119(f) statement. As such, he is in technical compliance with the requirements to challenge a discretionary sentencing claim. *See Commonwealth v. Rhoades*, 8 A.3d 912, 916 (Pa. Super. 2010). Thus, we will proceed to determine whether he has presented a substantial question for our review.

In his Rule 2119(f) statement, Woodard raises numerous discretionary sentencing claims, including: the sentence is manifestly excessive and unreasonable; the trial court placed no reasons on the record for the sentence imposed; the sentence was not individualized; the sentence was in excess of what was necessary to address the gravity of the offense, the protection of the community, and Woodard's rehabilitative needs; and the trial court used

an incorrect prior record score by double-counting his prior conviction for aggravated assault.

Importantly, Woodard raised only two discretionary claims in his post-sentence motion. In that filing, Woodard argued that the trial court abused its discretion by imposing a sentence that was "harsh and excessive under the circumstances" and "not supported by adequate reasons stated on the record." Post-sentence Motion, 10/1/20, at unnumbered 1. As Woodard failed to raise his other discretionary sentencing claims in his post-sentence motion, he failed to preserve them for our review. *See Commonwealth v. McAfee*, 849 A.2d 270, 275 (Pa. Super. 2004) (holding that issues challenging the discretionary aspects of a sentence must be raised during sentencing proceedings or in a post-sentence motion and that absent such efforts, an objection to a discretionary aspect of a sentence is waived).

Turning to the first discretionary sentencing claim that Woodard raised in his post-sentence motion,

> a defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013); *see also Commonwealth v. Moury*, 992 A.2d 162, 171-72 (Pa. Super. 2010) (holding that the imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as

- 15 -

where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment).

Here, Woodard does not explicitly challenge the consecutive nature of his sentences for persons not to possess and firearms not to be carried without a license. Nevertheless, by claiming that his aggregate sentence is excessive, he indirectly impugns the consecutive nature those sentences. Additionally, a claim that "a sentence is manifestly excessive such that it constitutes too severe a punishment" has been held to raise a substantial question. **See Commonwealth v. Derry**, 150 A.3d 987, 995 (Pa. Super. 2016). Thus, Woodard's first discretionary sentencing claim raises a substantial question.

Turning to Woodard's second discretionary sentencing claim, we observe that in every case in which the trial court imposes a sentence for a felony or a misdemeanor, the court shall make as a part of the record and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. **See Commonwealth v. Mouzon**, 812 A.2d 617, 620-21 (Pa. 2002); **see also** 42 Pa.C.S.A. § 9721(b). This Court has held that claims that the sentencing court imposed a sentence outside the standard guidelines without stating adequate reasons on the record presents a substantial question. **See Commonwealth v. Antidormi**, 84 A.3d 736, 759 (Pa. Super. 2014); **see also See Commonwealth v. Rodda**, 723 A.2d 212, 214 (Pa. Super. 1999) (*en banc*). While each of Woodard's sentences falls within the standard range of the sentencing guidelines, we are mindful

- 16 -

that this Court has also held that a claim that a court "did not state on the record any reasons for sentence" presents a substantial question. ***Commonwealth v. Malovich***, 903 A.2d 1247, 1253 (Pa. Super. 2006). Accordingly, Woodard's claim that the trial court failed to state any reasons for the sentence imposed raises a substantial question. Having determined that both of Woodard's preserved discretionary sentencing claims raise a substantial question, we will consider them in *seriatim*.

With respect to Woodard's first discretionary sentencing claim, he correctly notes that because all of his sentences fall within the standard range of the sentencing guidelines, our review requires us to determine whether "the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2). However, Woodard does not provide any reasoning, argument, citation to the record, or legal precedent explaining how the trial court's application of the standard range guidelines is "clearly unreasonable" under the particular circumstances of this case.[5] Nor does Woodard explain how his aggregate sentence is unduly harsh considering

---

[5] In support of his claim, Woodard asserts only that "the trial court failed to consider any of the relevant factors required under the Sentencing Code in imposing sentence." Woodard's Brief at 32. However, Woodard conflates his preserved excessiveness challenge with his unpreserved claim that the trial court failed to consider the factors set forth in 42 Pa.C.S.A. § 9721 (*i.e.*, the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant). As noted above, this latter claim was not raised in his post-sentence motion and, hence, was not preserved for our review.

the nature of his crimes and the length of imprisonment. ***See Moury***, 992 A.2d at 171-72.

The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. ***See*** Pa.R.A.P. 2119(a). Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. ***See Commonwealth v. Murchinson***, 899 A.2d 1159, 1160 (Pa. Super 2006) (deeming appellant's claims waived under Pa.R.A.P. 2119(a) because he did not develop meaningful argument with specific references to relevant caselaw and to the record to support his claims); ***see also Commonwealth v. Heilman***, 867 A.2d 542, 546 (Pa. Super. 2005) (recognizing that failure to provide "such discussion and citation of authorities as are deemed pertinent" may result in waiver); ***Commonwealth v. Cornelius***, 856 A.2d 62, 77 (Pa. Super. 2004) (declining to review appellant's claim where there was limited explanation and development of the argument). As Woodard failed to develop his argument, his first discretionary sentencing claim is waived.

In Woodard's second discretionary sentencing claim, he contends that his sentence must be vacated because the trial court did not announce any reasons for imposition of sentence at the time of sentencing. Woodard concedes that the Commonwealth articulated the relevant sentencing guidelines at the sentencing hearing, but nevertheless argues that the trial

court did not restate them when imposing sentence. Woodard claims that, after imposing sentence, the trial court merely stated that the sentence is consistent with the grading of each of the offenses, taking into consideration "your physical condition" and the "conduct that transpired." Woodard's Brief at 30 (citing N.T., 9/23/20, at 23). Nevertheless, Woodard urges us to vacate his sentence on the basis that the court offered no reasons for the sentence at the time of sentencing.

Our review of the record discloses that, at the sentencing hearing, the trial court explained to Woodard that the sentence imposed "is consistent with . . . the grading of each of those offenses and falls in, I believe, each of the cases at the bottom of the standard range, taking into consideration, as I have, your physical condition." N.T., 9/23/20, at 23. The court further explained, "I know, based upon having presided over this trial, the conduct that transpired and the reason why the verdict was returned by the jury, unanimously, as it was." *Id*.

While we recognize that the trial court's discussion of the reasons for Woodard's sentence was brief, we nevertheless conclude that it minimally complied with the dictates of § 9721(b). This Court has explained:

> [A]lthough a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence, ... the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender. A discourse on the court's sentencing philosophy, as it applies to the defendant before it, is not required. But the reasons must reflect the judge's consideration of the sentencing code, the circumstances of the offense[,] and the character of the offender.

*Commonwealth v. Flowers*, 149 A.3d 867, 875-76 (Pa. Super. 2016) (quotations and citations omitted).

Here, the prosecutor stated on the record the standard range guidelines for each of the crimes of which Woodard was convicted. The prosecutor also stated on the record Woodard's extensive criminal history, including the fact that his prior convictions prevented him from possessing a firearm. Woodard's counsel spoke extensively on his behalf, and explained Woodard's recent health problems, including two strokes which left him with impaired functioning on the right side of his body, a machining accident which severely injured his right hand, and mental health issues, including memory loss and depression. Finally, Woodard exercised his right to allocution, during which he repeatedly claimed that he had no prior criminal record, did not commit the offenses in question, and that the entire proceeding was a "set up." N.T., 9/23/20, at 12-19, 25. The trial indicated on the record that she took Woodard's physical limitations into consideration when sentencing him at the bottom of the standard range of the guidelines for each of his convictions. The court additionally explained that she had presided over Woodard's trial and was aware of the conduct and crimes for which Woodard was accused and for which he was unanimously convicted by the jury. Taken as a whole, we conclude that the record reflects the sentencing court's consideration of the sentencing code, the circumstances of the offenses of which Woodard was

convicted, and his character. Accordingly, we find no abuse of discretion, and Woodard is not entitled to relief on this claim.[6]

Next, while not included in his statement of errors, Woodard claims that his sentence for persons not to possess a firearm under 42 Pa.C.S.A. § 6105(a) is illegal because the sentence exceeds the statutory maximum for the grading of that offense. Any claim that a sentence exceeds the lawful maximum implicates the legality of a sentence. *See Commonwealth v. Foster*, 960 A.2d 160, 164 (Pa. Super. 2008). Similarly, a challenge to the proper grading of an offense implicates the legality of the sentence. *See Commonwealth v. Popow*, 844 A.2d 13, 17 (Pa. Super. 2004). When presented with an illegal sentencing claim, our standard of review is *de novo*, and the scope of our review is plenary. *See Commonwealth v. Felder*, 75 A.3d 513, 515 (Pa. Super. 2013).[7]

_____

[6] We additionally observe that the sentencing court had the benefit of a presentence investigation report. Where, as here, the sentencing court imposed standard-range sentences with the benefit of a presentence report, we will not consider the sentence excessive. *See Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa. Super. 2011).

[7] Ordinarily, any issue not included in the statement of errors is waived. *See* Pa.R.A.P. 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). However, a challenge to the legality of sentence is never waived and may be the subject of inquiry by the appellate court *sua sponte*." *See Commonwealth v. Rossetti*, 863 A.2d 1185, 1193 (Pa. Super. 2004). Thus, Woodard's illegal sentencing claim is not waived.

Woodard argues that the bill of information charged him with persons not to possess a firearm under 42 Pa.C.S.A. § 6105(a), which was graded as a felony of the second degree. Woodard asserts that, prior to trial, the Commonwealth indicated that it would amend the information to increase the grading of that offense to a felony of the first degree if Woodard was found guilty of that offense. Woodard claims that the Commonwealth never amended the information, and that his conviction for persons not to possess a firearm remains a felony of the second degree on the court docket sheet and the sentencing order. Woodard argues that, pursuant to 18 Pa.C.S.A. § 106(b)(3), the statutory maximum sentence for a felony of the second degree is ten years. On this basis, he contends that his sentence of six to twelve years in prison for that conviction is illegal because it exceeds the statutory maximum for a second-degree felony.

Generally, a violation of § 6105 constitutes a second-degree felony unless the Commonwealth alleges and proves at trial that a defendant "was in physical possession or control of a firearm[.]" 18 Pa.C.S.A. § 6105(a.1)(1.1)(i)(B). This additional factor is not an element of the offense, but it is an additional fact the jury must determine at trial. **See Commonwealth v. Gomez**, 224 A.3d 1095, 1103 (Pa. Super. 2019). If the jury determines that the defendant possessed the firearm, then the grading of the firearms conviction is altered from a felony of the second degree to a felony of the first degree pursuant to 18 Pa.C.S.A. § 6105(a.1)(1.1)(i)(B).

Thus, the grading of a conviction under § 6105 is not dependent upon the grading indicated in the criminal information; rather, it is dependent upon whether the jury finds that the defendant possessed a firearm.

Our review of the record indicates that the trial court, after conferring with the parties, included a question on the verdict slip as to whether Woodard physically possessed the firearm. N.T., 2/14/20, at 94-95. The jury answered that question in the affirmative. *Id*. Thus, at sentencing, the trial court correctly noted that, pursuant to the jury's specific finding that Woodard possessed the firearm, the § 6105(a)(1) conviction was properly graded as a felony of the first degree. Accordingly, Woodard's illegal sentencing claim regarding his conviction under § 6105 merits no relief.

In his next claim, Woodard contends that the trial court lacked authority to order him to pay for either (1) the cost of Brown's travel expenses in the amount of $134.00 to attend Woodard's trial; or (2) the crime lab fee of $1,340.00 for the DNA analysis of his gun. Woodard argues that these payments constitute an illegal sentence because neither payee qualifies as a victim eligible for restitution under 18 Pa.C.S.A. § 1106. Woodard further argues that the order of restitution constitutes an illegal sentence because the court failed to comply with the requirements of subsections (c)(2)(i) and (ii).

Under Pennsylvania law, costs and restitution are treated as distinct and separate concepts. The authority of the sentencing court to impose restitution is codified at § 1106, which provides, in relevant part, as follows:

(a) General rule.--Upon conviction for any crime wherein:

(1) property of a victim has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime; or

(2) the victim, if an individual, suffered personal injury directly resulting from the crime,

the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.
    * * *

(c) Mandatory restitution.-

    * * *

    (2) At the time of sentencing the court shall specify the amount and method of restitution.  In determining the amount and method of restitution, the court:

    (i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and such other matters as it deems appropriate.

    (ii) May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just.

18 Pa.C.S.A. § 1106(a)(1), (2), (c)(1), (2).

Section 1106(a) is mandatory in its directive and removes any discretion

from the sentencing court to impose restitution as punishment upon conviction

of a crime under the specified circumstances.  ***See Commonwealth v. Weir***,

239 A.3d 25, 37 (Pa. 2020).[8]  Thus, if the statutory circumstances are not established and the sentencing court orders restitution without the statutory authorization to do so, the challenge to the sentence implicates its legality. *Id*.  A challenge to the trial court's authority to impose restitution as part of a sentence is reviewable as of right on direct appeal, without regard to preservation of the claim.  *Id*. at 34.

With respect to Brown's travel costs, Woodard contends that the order of restitution constitutes an illegal sentence because no evidence was presented either at trial or sentencing that Brown sustained any injury to person or property that would entitle him to restitution under § 1106(a). Woodard concedes that the cost of Brown's travel was set forth in the Commonwealth's sentencing memorandum.  However, he insists that because travel costs do not constitute injury to person or property, they are not subject to restitution under § 1106(a).

Woodard offers no case law in support of his argument.  However, under the plain terms of § 1106, in order to eligible for restitution, the victim must have, as a direct result of the crime in question, either (1) had property stolen,

---

[8] The *Weir* Court further explained that a claim which does not dispute the sentencing court's authority to impose restitution but instead challenges the amount of restitution ordered implicates the discretionary aspects of the sentence imposed and must be preserved for appellate review.  *See Weir*, 239 A.3d at 38.

converted, or decreased in value; or (2) sustained personal injury.   18 Pa.C.S.A. § 1106(a)(1), (2).

Here, there is no dispute that Brown suffered neither personal injury nor loss of or damage to property as a direct result of Woodard's crimes. Moreover, the fact that Brown incurred expenses in traveling to testify at Woodard's trial is not a direct result of Woodard's crimes.  Rather, such costs were incurred due to the fact that Brown resides in Louisiana.   Accordingly, we vacate the portion of Woodard's judgment of sentence ordering him to pay $134.00 in restitution to Brown.

Turning to Woodard's challenge to the crime lab fee of $1,340.00, we observe that an order requiring a convicted defendant to pay a lab fee related to the prosecution of his case does not constitute restitution under § 1106. Instead, such a lab fee is considered a "cost" related to the prosecution of a criminal case.  *See* 42 Pa.C.S. § 1725.3.  Although neither Woodard, the Commonwealth, nor the sentencing court reference § 1725.3, our own research indicates that pursuant to § 1725.3, the sentencing court had the authority to impose on Woodard the cost of laboratory fees incurred in prosecuting him.  Section 1725.3 provides, in relevant part:

> A person who . . . is convicted of a crime as defined in 18 Pa.C.S.[A.] § 106 (relating to classes of offenses) shall, in addition to any fines, penalties or costs, in every case where laboratory services were required to prosecute the crime or violation, be sentenced to pay a criminal laboratory . . . fee.

42 Pa.C.S.A. § 1725.3.

- 26 -

As indicated above, Woodard does not acknowledge or discuss § 1725.3 in his brief. Nevertheless, because the imposition of lab fees is a mandatory cost rather than restitution, we conclude that this aspect of Woodard's judgment of sentence is not illegal, and he is not entitled to relief on this claim.[9]

In his final issue, Woodard asserts that the verdict was against the weight of the evidence. The following legal principles apply when a challenge to the weight of the evidence supporting a conviction is presented to the trial court:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

---

[9] Given our disposition vacating the restitution award to Brown, which is the only restitution ordered in this case, we need not address Woodard's argument that the trial court failed to specify the method of payment of restitution, as that issue is moot.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations, footnotes and quotation marks omitted).  Thus, to allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court."  *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2016) (internal citation omitted).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.  Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.  One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in original, internal citations omitted).

Woodard claims that the trial court's denial of his post-sentence motion challenging the verdict based on the weight of the evidence was manifestly unreasonable.  According to Woodard, the testimony and evidence presented was inherently contradictory and unreliable as to whether he first started arguing with Brown or White, whether any firearm was visible, and what words

were uttered. Woodard points out that he explained the presence of the firearm in his vehicle and why his DNA was on it. Woodard asserts that there was clear animosity directed at him by Brown and White which rendered their testimony suspect, as evidenced by the discrepancies between witness testimony. Based on these arguments, Woodard claims that the jury's verdict could only have been based on speculation and conjecture and was against the weight of the evidence.

The trial court considered Woodard's weight challenge and determined that the verdict did not shock one's conscience. It reasoned:

> [T]he Commonwealth presented four (4) eyewitnesses who offered the jury consistent accounts of the June 7, 2018 road rage incident. The jury, as is its province, apparently choose to credit the testimony of the four (4) eyewitnesses rather than testimony offered by [Woodard]. Any conflicts in the evidence or contradictions in testimony are exclusively for the jury to resolve. Moreover, having had the opportunity to hear and see the evidence presented at trial, this jury's verdict does not "shock one's sense of justice."

Trial Court Opinion, 2/10/21, at 47.

As discussed above, we give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is not against the weight of the evidence. In this matter, we discern no abuse of discretion by the trial court in arriving at its determination that the verdict of guilt did not shock the conscience. While there may have been conflicting testimony as to whether Woodard first engaged in an argument with White or Brown, there was no dispute that

Woodard engaged in a heated verbal exchange with both White and Brown. Nor is there any dispute that, after exiting his vehicle during those verbal arguments, Woodard returned to his vehicle and retrieved something. While Brown did not see what Woodard retrieved, the jury was free to believe White's testimony that Woodard retrieved a gun, which he pointed directly at her. Finally, the jury was free to disbelieve the entirety of Woodard's testimony in which he claimed that Brown threatened him, and that a passenger in Woodard's vehicle was the individual who owned and pointed the gun at White. Accordingly, Woodard's weight challenge merits no relief.

Based on the foregoing, we affirm Woodard's convictions and all aspects of his judgment of sentence except for the order of restitution to Brown in the amount of $134.00, which we vacate.

Convictions affirmed, all aspects of judgment of sentence affirmed except for order of restitution, which is vacated.

President Judge Panella joins the memorandum.

President Judge Emeritus Stevens files a concurring/dissenting memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2022